UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PEARLIE T.,

                                    Plaintiff,                    DECISION AND ORDER

                                                                  19-CV-0271L

                    v.


ANDREW SAUL,
Commissioner of Social Security,

                                    Defendant.
_____


        Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security

("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the

Commissioner's final determination.

        On November 10, 2015, plaintiff, then thirty-nine years old, filed an application for

supplemental security income benefits, alleging an inability to work since November 10, 2014.

Her application was initially denied. Plaintiff requested a hearing, which was held on February 23,

2018 before Administrative Law Judge ("ALJ") Maria Herrero-Jaarsma. (Administrative

Transcript, Dkt. #6 at 16). The ALJ issued a decision on April 25, 2018, concluding that plaintiff

was not disabled under the Social Security Act. (Dkt. #6 at 16-29). That decision became the final

decision of the Commissioner when the Appeals Council denied review on January 3, 2019. (Dkt.

#6 at 1-3). Plaintiff now appeals.

        The plaintiff has moved for judgment remanding the matter for further proceedings (Dkt.

#16), and the Commissioner has cross moved for judgment on the pleadings (Dkt. #23), pursuant

to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings, in the manner and to the extent described below.

## DISCUSSION

### I.      Relevant Standards

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

### II.      The ALJ's Decision

Here, the ALJ found that the plaintiff has the following severe impairments, not meeting or equaling a listed impairment: osteoarthritis of the right knee with status-post right knee arthroscopy, obstructive sleep apnea, intellectual disorder, depressive disorder, and anxiety disorder with panic attacks and without agoraphobia. (Dkt. #6 at 18).

Applying the special technique to plaintiff's mental impairments, the ALJ found that plaintiff has a moderate limitation in understanding, remembering and applying information; a moderate limitation in interaction with others; a moderate limitation in concentration, persistence and pace; and a mild limitation in adapting and managing herself. (Dkt. #6 at 19-20).

After summarizing the evidence of record, the ALJ determined that plaintiff retains the residual functional capacity ("RFC") to perform light work, except that she can stand or walk for up to 4 hours, and sit for up to 6 hours, in an 8-hour workday. She requires the use of a cane for

ambulation, and should be permitted to sit or stand at will so long as it doesn't cause her to be off task for more than 5% of the time. She can no more than occasionally push, pull, climb ramps or stairs, balance on level surfaces, stoop, or kneel. She can never crouch, crawl, or be exposed to unprotected heights, moving machinery or moving mechanical parts. She can understand, carry out and remember simple, routine and repetitive tasks (defined as requiring the same tasks every day with little variation in location, hours or tasks). She must work in a low stress environment, defined as one with no supervisory responsibilities, no work at a production rate pace, no fast-moving assembly line-type work, no independent decision-making except with respect to simple, routine, repetitive decisions, and few if any workplace changes in routines, processes or settings). Her work must not require a high level of attention to detail, or more than occasional supervision. She must avoid work requiring written instructions unless there is close supervision, defined as a supervisor explaining the instructions in detail at the start of the job, with spoken instructions being the preferred method. She must not do work that requires travel to unfamiliar places, or more than occasional contact and interaction with supervisors, coworkers and the public. Finally, plaintiff is limited to work that can be performed independently or generally isolated from other employees, although coworkers can be in the general work area. (Dkt. #6 at 21-22).

When asked at the hearing whether there were jobs in the economy that a person with this RFC could perform, vocational expert Jay Steinbrenner testified that such an individual could perform the representative light positions of injection molder, electronics sub-assembler and small product assembler. (Dkt. #6 at 28).

The ALJ accordingly found plaintiff not disabled. This appeal followed.

### III.     Plaintiff's Severe Impairment of Osteoarthritis of the Right Knee

The ALJ's decision made very detailed findings with respect to plaintiff's RFC, supported with reference to plaintiff's medical records, examination findings, and the opinions of consulting physicians.

However, upon review, I find that the record is incomplete with respect to the affect of plaintiff's right knee osteoarthritis on her exertional capacity, and as such, the matter must be remanded for the limited purpose of gathering additional medical opinion evidence on that issue.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The record in this case contained treatment and surgical records establishing osteoarthritis of the right knee, with continued complaints of pain and gait disturbances after surgery. As such, the ALJ determined that plaintiff's "osteoarthritis of right knee with status-post right knee arthroscopy" was a severe impairment. (Dkt. #6 at 18.) However, the record lacked any medical opinion evidence or objective assessment of plaintiff's ability to perform any exertional task (let alone her ability to perform tasks requiring use of her right knee) whatsoever.

The absence of any medical opinion or other comprehensive assessment of plaintiff's exertional capacity created a clear evidentiary gap, and resulted in an RFC finding that was based solely upon the ALJ's layperson interpretation of "raw data" in the record, including imaging studies and surgical records for plaintiff's right knee. *See Cruver v. Commissioner*, 2020 U.S. Dist. LEXIS 137683 at *4-*5 (W.D.N.Y. 2020) (remand is required where the ALJ "did not rely on any medical opinions" in reaching his highly-specific exertional findings); *Bailey v. Commissioner*, 2020 U.S. Dist. LEXIS 128280 at *19 (W.D.N.Y. 2020) (an ALJ's use of lay judgment to

formulate an RFC is reversible error, and requires remand "so that the ALJ can develop the medical record and ground the physical RFC determination in a medical opinion or opinions in the record").

In light of this gap, the ALJ should have attempted to obtain RFC reports from treating physicians which specifically assessed plaintiff's exertional and postural limitations relating to her knee impairment, and failing that, should have obtained a reliable and "conclusive determination from a medical consultant" who was able to review the record and perform an in-person evaluation. *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90 (W.D.N.Y. 2000). *See generally* 20 C.F.R. §404.1519a(b)(4) (an ALJ must order a consultative examination when a "conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved"). Although the ALJ's exertional RFC determination included significant and detailed limitations that were manifestly intended to address and compensate for plaintiff's right knee complaints, that determination was inescapably based solely upon the ALJ's own layperson interpretation of the raw medical data, and evidence that plaintiff's physicians had found plaintiff's complaints of pain to be "out of proportion" to objective findings or imaging studies (with no comment as to plaintiff's actual limitations). (Dkt. #6 at 26, 641, 725). Remand for further development of the record is therefore necessary. *See Falcon*, 88 F. Supp. 2d 87 at 90; *Bailey*, 2020 U.S. Dist. LEXIS 128280 at *19.

## IV.   Plaintiff's Other Arguments

The Court has considered the remainder of plaintiff's arguments and objections to the ALJ's decision and to the completeness of the record, and finds them to be without merit.

Plaintiff argues that the ALJ overlooked additional exertional impairments, such as degenerative disc disease of the lumbar spine and urinary incontinence when coughing or sneezing. However, the ALJ did discuss and consider imaging studies showing a mild disc bulge in plaintiff's lumbar spine, which did not result in any diagnosis of lumbar disc disease or require any treatment.

(Dkt. #6 at 25). Furthermore, the record contains no appreciable evidence that plaintiff required or received any regular treatment for incontinence, or that either her alleged spinal issues or stress incontinence limited her ability to perform work-related functions. As such, the ALJ's alleged failure to explicitly account for them in her RFC finding was not erroneous.

Plaintiff also contends that the ALJ's findings concerning plaintiff's mental limitations were not supported by substantial evidence, because the ALJ gave only "minimal" weight to the December 6, 2011 consultative intelligence report by Dr. Renee Baskin, and only "moderate" weight to the January 28, 2016 opinion of consulting psychologist, Dr. Christine Ransom.

The Court disagrees. The ALJ properly reasoned that Dr. Baskin's opinion, which was rendered three years before the alleged disability onset date and was based on incomplete attempts at objective testing, was of little probative value. Even assuming *arguendo* that the ALJ had erred in declining to grant greater weight to Dr. Baskin's opinion, such error would be harmless, as the RFC determined by the ALJ was entirely consistent with the minimal limitations in simple directions and simple tasks, and moderate limitations in attention and concentration, schedule-keeping, learning new tasks, performing complex tasks independently, decision-making, social interaction, and stress that Dr. Baskin opined. (Dkt. #6 at 518-21)

In assessing Dr. Ransom's opinion, the ALJ determined that plaintiff's treatment records actually supported *greater* limitations in attention and concentration, social interaction, and dealing with stress than what Dr. Ransom described. (Dkt. #6 at 627-30). The ALJ's resultant RFC determination was well-supported by reference to treatment notes, objective mental status findings, and plaintiff's testimony, and I find no reason to disturb it.

In short, I find no error in the ALJ's determination of plaintiff's severe impairments, her consideration of the effect of plaintiff's non-severe exertional impairments on plaintiff's ability to

work, her evaluation of the medical opinions of record, and her findings with respect to plaintiff's nonexertional (mental) limitations. These findings are supported by substantial evidence of record, and were not the result of legal error.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for remand (Dkt. #16) is granted, and the Commissioner's cross-motion (Dkt. #23) is denied. The Commissioner's decision that plaintiff was not disabled is reversed, and the matter is remanded for further proceedings, for the narrow purpose of gathering and considering medical opinion evidence with respect to plaintiff's exertional limitations.

Upon remand, the Commissioner is instructed to request RFC reports from plaintiff's treating source(s), and/or to order consultative examinations, sufficient to permit the redetermination of plaintiff's exertional RFC, and specifically to assess the impact of plaintiff's right knee osteoarthritis upon her ability to perform work-related functions.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        December 17, 2020